## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| VIENNA DiPIAVE,<br>        Plaintiff, | No. 3:23-cv-61 (SRU) |
| v. | |
| SIKORSKY AIRCRAFT CORP., et al.,<br>        Defendants. | |

## <u>RULING AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS</u>

Plaintiff Vienna DiPiave claims that defendants Sikorsky Aircraft Corporation and Lockheed Martin Corporation (collectively, "Sikorsky") and Aquinas Consulting, LLC ("Aquinas"), collectively "Defendants," discriminated against her in the terms and conditions of her employment and wrongfully discharged her due to her pregnancy.  Sikorsky and Aquinas have separately moved to dismiss Counts Two and Three of the Complaint for failure to state a claim.  I **grant** the motions to dismiss.

## I.      Background

### A.   <u>Factual Allegations</u>[1]

Beginning on or about April 2020, plaintiff Vienna DiPiave was employed as an aero mechanic technician for defendant Aquinas Consulting, LLC, a company that provides employees on a contract basis to clients including defendants Sikorsky Aircraft Corporation and Lockheed Martin Corporation.  Compl., Doc. No. 1-1, Count 1, ¶¶ 1-2.  DiPiave, as a contract employee of Aquinas, was assigned to work for Sikorsky, where she was supervised by Sikorsky

---

[1] The factual allegations are taken from the Complaint and, for purposes of this motion, assumed to be true.

employees. *Id.* As a contract employee, DiPiave would be able to apply for permanent positions with Sikorsky. *Id.*, Count 1, ¶ 3.

On or about November 2020, DiPiave became pregnant and made Defendants aware of her pregnancy. *Id.*, Count 1, ¶ 4. During her pregnancy, DiPiave satisfactorily performed her job duties and worked approximately sixty hours per week. *Id.*, Count 1, ¶ 5.

On or about February 2021, Sikorsky requested that DiPiave participate in a health assessment. *Id.*, Count 1, ¶ 6. About two weeks thereafter, on or about February 19, 2021, DiPiave was discharged by her supervisor, a Sikorsky employee, purportedly for lack of work. *Id.*, Count 1, ¶ 7. DiPiave contends that there was sufficient work to be performed and that three other aero mechanic technicians in her department hired after her were not discharged for lack of work. *Id.*, Count 1, ¶ 8. At the time of her discharge, DiPiave was about four months pregnant and able to continue performing her job duties. *Id.*, Count 1, ¶¶ 6, 9.

DiPiave contends that Defendants, through their agents, servants, and/or employees, orally represented to DiPiave that there was sufficient work to keep her employed and that she would be transitioned to a full-time Sikorsky employee. *Id.*, Count 2, ¶ 9. As a result, and to her detriment, DiPiave did not seek other employment possibilities and/or opportunities. *Id.*, Count 2, ¶ 10. DiPiave asserts that Defendants knew or should have known that their assurances, statements, and representations that she would be transitioned to a full-time employee of Sikorsky were false and that the false assurances caused her harm. *Id.*, Count 2, ¶¶ 11-12.

DiPiave states that, in reliance on the oral statements and promises of Defendants, through their agents, servants, and/or employees, that she would be transitioned to full time employment with Sikorsky, she reasonably expected to continue employment with "the

Defendant"; that Defendants knew or should have known that their actions were inconsistent with their statements; and that Defendants caused her harm. *Id.*, Count 3, ¶¶ 11 -14.

B. <u>Procedural History</u>

On or about December 21, 2022, DiPiave sued Defendants in Connecticut Superior Court, alleging that Defendants discriminated against her in the terms and conditions of her employment by treating her disparately and wrongfully discharging her due to her pregnancy. *See generally* Compl., Doc. No. 1-1. DiPiave asserts claims for: (1) violations of her civil rights arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; 29 C.F.R. Part 16; and the Pregnancy Discrimination Act; (2) negligent misrepresentation; and (3) promissory estoppel. *Id.*

On January 18, 2023, Sikorsky removed this action to this Court, asserting federal question jurisdiction. Notice of Removal, Doc. No. 1. No party opposed removal.

On February 24, 2023, Aquinas and Sikorsky separately moved to dismiss Counts Two and Three of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that the Complaint fails to state a claim; in the alternative, they moved for a more definite statement pursuant to Rule 12(e) on the basis that the Complaint fails to identify which claim or claims DiPiave asserts against which defendant. Aquinas Mot. to Dismiss, Doc. No. 20; Sikorsky Mot. to Dismiss, Doc. No. 21. Aquinas, in addition to its own arguments, incorporated the arguments of Sikorsky "to the extent applicable." *See* Aquinas Mem., Doc. No. 20-1 at 7, 10.

DiPiave opposed the motions to dismiss on April 17, 2023. Docs. No. 28-29.

Defendants replied on May 8, 2023. Docs. No. 33-34.

The motions to dismiss are now before me. No party requested oral argument, and I decide the motions without it. *See* D. Conn. L. Civ. R. 7(a).

3

## II.     Standard of Review

### A.  Federal Rule of Civil Procedure 8

Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To satisfy this standard, the complaint must at a minimum 'disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'"  *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)).

### B.  Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that a plaintiff alleging fraud "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  To satisfy the "heightened pleading requirements" set by Rule 9(b), a plaintiff bringing a claim sounding in fraud must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012) (citation omitted).

### C.  Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof."  *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

## III.   Discussion

Defendants move to dismiss Counts Two and Three on the basis that each count fails to satisfy the pleading standards required by Federal Rules of Civil Procedure 9(b) and 8, respectively, and because each count fails to state a claim. I address each count in turn.

### A.   Count Two: Negligent Misrepresentation

To state a claim for negligent misrepresentation, DiPiave must allege facts in support of the following: (1) a defendant made a misrepresentation of fact that (2) the defendant knew or should have known was false, and that (3) she reasonably relied on the misrepresentation and (4)

suffered pecuniary harm as a result.  *Nazami v. Patrons Mutual Ins. Co.*, 280 Conn. 619, 626 (2006).  "[T]he plaintiff need not prove that the representations made by the defendant[ ] were promissory.  It is sufficient . . . that the representation contained false information."  *D'Ulisse-Cupo v. Bd. of Directors of Notre Dame High Sch.*, 202 Conn. 206, 218 (1987).

　　　1.　*Under Rule 9(b), Count Two is not pled with sufficient particularity.*

　　　Courts in the Second Circuit generally hold a claim for negligent misrepresentation to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *See, e.g.*, *McNeil v. Yale University*, 436 F. Supp. 3d 489, 536 (D. Conn. 2020), *aff'd in part*, *vacated in part sub nom. McNeil v. Yale Chapter of Alpha Delta Phi Int'l, Inc.*, 2021 WL 5286647 (2d Cir. Nov. 15, 2021); *Lee v. Grocery Haulers Inc.*, 2020 WL 7481799, at *1 (D. Conn. Dec. 18, 2020); *Catalano v. Bedford Assocs.*, Inc., 9 F. Supp. 2d 133, 136 (D. Conn. 1998).  *But see IM Partners v. Debit Direct Ltd.*, 394 F. Supp. 2d 503, 521 n.12 (D. Conn. 2005).  Thus, a plaintiff alleging negligent misrepresentation must: (1) specify the statements that the plaintiff contends were false; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were false.  *McNeil*, 436 F. Supp. 3d at 536.  Defendants argue that I should dismiss Count Two because DiPiave does not specifically allege what representations were made, who made them, and when and where they were made.  *See* Aquinas Mem., Doc. No. 20-1, at 5; Sikorsky Mem., Doc. No. 21-1, at 4-5.  I agree.

　　　*Lee v. Grocery Haulers Inc.*, on which Aquinas relies, is instructive.  *See* 2020 WL 7481799 (D. Conn. Dec. 18, 2020).  There, this Court considered a plaintiff's allegation that the defendant represented that "a policy existed whereby [the plaintiff] would not be discharged from employment without the application of a progressive disciplinary policy, including implementation of a performance improvement plan prior to termination of employment."  *Id.* at

*2.  This Court dismissed the plaintiff's negligent misrepresentation claim as insufficiently pled under Rule 9(b) for failure to specify a particular statement made, the person who made the statement, and where and when the statement was made.  *Id.*

For the reasons set forth in the *Grocery Haulers* decision, I agree with Defendants that the Complaint fails to meet the heightened pleading standard required by Rule 9(b).  Through Count Two, DiPiave simply alleges that unspecified "Defendants . . . orally represented . . . that there was sufficient work to keep [her] employed and that she would be transitioned to a full time Sikorsky . . . employee"; that she thus "did not seek other employment possibilities . . . to her detriment"; and that Defendants "knew or should have known, that the oral expressed and/or implied assurances statements and/or representations" were false.  Compl., Count 2, ¶¶ 9-12. The factual allegations supporting Count Two do not specify any particular false statement made; the person who made the statement; the defendant or defendants for whom the statement-maker was an agent, servant, or employee; and where and when the statement was made.  Absent particularized factual allegations, Count Two is pled with insufficient particularity to survive Defendants' motion to dismiss.

In her opposition memoranda, DiPiave for the first time attributes the purported misrepresentations to unspecified Aquinas employees (in her brief in opposition to the Aquinas Motion to Dismiss) and to unspecified Sikorsky employees (in her brief in opposition to the Sikorsky Motion to Dismiss).  *Compare* Pl.'s Opp'n to Aquinas Mot., Doc. No. 28, at 9 ("Plaintiff has sufficiently alleged that representatives of the Defendant, *Aquinas Consulting, LLC*, made representations to the Plaintiff when she began her work assignment. . . .") (emphasis added), *with* Pl.'s Opp'n to Sikorsky Mot., Doc. No. 29, at 9 ("Plaintiff has sufficiently alleged that representatives of *both Defendants, Sikorsky Aircraft Corporation and Lockheed Martin*

*Corporation* made representations to the Plaintiff when she began her work assignment. . . .") (emphasis added); *see also* Aquinas Reply, Doc. No. 33, at 2 (observing same); Sikorsky Reply, Doc. No. 34, at 2 n.1 (observing same).  DiPiave's attempts to amend the Complaint through her briefing fall short.  For one, it is well-settled that a plaintiff cannot draw upon facts outside the complaint in opposition to a motion to dismiss.  *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).  Additionally, DiPiave's attempt to amend the Complaint neither cures the insufficiency of her pleading under Rule 9(b) nor the insufficiency of her pleading under the lower standard set by Rule 8.  Defendants do not have fair notice of the claims against them where DiPiave inconsistently alleges which one or more of three party defendants— Aquinas, Sikorsky, or Lockheed Martin— is liable for the claimed tortious conduct.  *See* Aquinas Mem., Doc. No. 20-1, at 6 (arguing same); Sikorsky Mem., Doc. No. 21-1, at 5 (same).

Count Two fails to satisfy the heightened pleading standard required by Rule 9(b).  I grant Defendants' motions to dismiss it.

### 2.   *I grant DiPiave leave to amend Count Two.*

Having concluded that I must dismiss Count Two as insufficiently pled, I next determine whether to dismiss Count Two without prejudice and with leave to amend or with prejudice because amendment would be futile.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  To do so, I consider the argument of Aquinas that DiPiave cannot state a negligent misrepresentation claim because her reliance on any alleged misrepresentation is not reasonable in light of the at-will status of her employment and her employer's "'unfettered discretion'" to terminate her employment "'at any time.'"[2]  *See* Aquinas Mem., Doc. No. 20-1, at 6-7 (quoting *Desrosiers v.*

---

[2] Although the Complaint does not allege that DiPiave was employed at-will, Aquinas assumes so.  *See* Aquinas Mem., Doc. No. 20-1, at 7.  In her memorandum in opposition, DiPiave neither confirms nor denies that she was an at-will employee.  *See* Pl.'s Opp'n to Aquinas Mot., Doc. No. 28, at 12-13.  "Absent an allegation to the contrary,"

8

*Diageo N. Am., Inc.*, 137 Conn. App. 446, 459-60 (2012)).  DiPiave counters that an at-will

employee can indeed state a cognizable claim for negligent representation under Connecticut

law.  Pl.'s Opp'n to Aquinas Mot., Doc. No. 28, at 12-13 (citing S*tewart v. Cendant Mobility*

*Servs. Corp.*, 267 Conn. 96, 115 n.10 (2003)).  Both parties' statements of law are correct.  As

this Court has previously acknowledged:

> It is true . . . that employers generally possess the unfettered discretion to end the
> employment relationship at any time when an individual is employed at will.
> Thus, an employee's acknowledgment of his or her at will status can defeat a
> negligent misrepresentation claim because the employee could not reasonably
> believe that his or her employment would continue for any particular time frame.
>
> But, when an employer makes a representation to an employee that he or she will
> not be terminated for a particular reason, or for a particular period of time, that
> can circumscribe an employer's otherwise-unfettered discretion, and give rise to a
> negligent misrepresentation claim if the employee is later fired.

*Corcoran v. G&E Real Est. Mgmt. Servs., Inc.*, 484 F. Supp. 3d 43, 51 (D. Conn. 2020) (cleaned

up).  The issue is this case is the application of the principles discussed in *Corcoran*.

At this time, I cannot conclude that DiPiave's negligent representation claim necessarily

fails on the reliance prong.  The Complaint does not allege with specificity what one or more of

the defendants told her.  Thus, it is premature to assess whether Defendants' statements were

consistent with or cabined their discretion, whether Defendants exceeded the limits (if any) of

their discretion, or whether Defendants had unfettered discretion to terminate DiPiave's

employment at will.

I conclude that the problem with Count Two is deficient pleading, and I dismiss Count

Two without prejudice and with leave to amend.

---

Connecticut courts "presume[ ] that employment relationships are at will."  *Bredefeld v. Bristol Hosp.*, 2010 Conn. Super. LEXIS 5523, at *9 (Conn. Super. Ct. Nov. 12, 2010) (citing *Thibodeau v. Design Grp. One Architects, LLC*, 260 Conn. 691, 697 (2002)).  Thus, I also presume that DiPiave was employed at-will.

B.  Count Three: Promissory Estoppel

To state a claim for promissory estoppel, DiPiave must allege facts in support of the following: (1) a defendant made her a clear and definite promise on which the defendant did or should have expected her to rely, and (2) she actually relied upon the promise to her detriment. *See D'Ulisse–Cupo v. Bd. of Dirs. of Notre Dame High Sch.*, 202 Conn. 206, 213 (1987).  The promise on which the plaintiff relies must be "sufficiently promissory [and] sufficiently definite to support contractual liability" and should "manifest[ ] . . . present intention on the part of the defendants to undertake immediate contractual obligations to the plaintiff." *Id.* at 214-15.  The promise, however, "need not be the functional equivalent of an offer to enter into a contract." *Stewart v. Cendant Mobility Servs. Corp.,* 267 Conn. 96, 110 (2003).

A promissory estoppel claim is subject to the notice pleading standard set by Rule 8, rather than the heightened pleading standard set by Rule 9(b); therefore, it does not require the same pleading specificity as a claim for negligent misrepresentation.  *See Grocery Haulers Inc.*, 2020 WL 7481799, at *3 (citing *Aesthetic and Reconstructive Breast Center, LLC v. United HealthCare Group, Inc.*, 367 F. Supp. 3d 1, 11 (D. Conn. 2019)).  Defendants contend that I should dismiss Count Three because DiPiave "alleges no facts in support of [her] conclusory allegations."  Sikorsky Mem., Doc. No. 21-1, at 6.  Defendants specifically assert that the Complaint fails to allege "who made the [ ] promises to her, when they were made or what specifically was promised to her" and thus fails to identify the defendant for whom the alleged promisor was an agent or employee.  *Id.*.; *see also* Sikorsky Reply, Doc. No. 34, at 3-4.

I agree with Defendants' implication that Count Three fails to satisfy the Rule 8 standard but only to the extent that the allegations fail to put Defendants on notice of the specific defendant and/or defendants against whom DiPiave asserts her promissory estoppel claim.  That said, I emphasize that my ruling is not as sweeping as Defendants' critique of the Complaint.

Rule 8 does not require that DiPiave specify, for example, a specific person who made the statement nor when and where the statement inducing her reliance was made. *See, e.g.*, *Aesthetic and Reconstructive Breast Center, LLC v. United HealthCare Group, Inc.*, 367 F.Supp.3d 1, 11 (D. Conn. 2019) (concluding that a medical provider had sufficiently pled a promissory estoppel claim where it plausibly alleged that it had received authorization from the defendant insurer, constituting a promise to receive reasonable payment for its services, without alleging any specific employee or employees responsible for issuing the authorization).

Turning instead to an analysis under Rule 12(b)(6), I conclude that DiPiave has not alleged a sufficiently clear and definite promise in which Defendants could reasonably have expected to induce her reliance and on which she reasonably relied. Before explaining why, I will briefly address the cases on which the parties rely.

In support of its motion to dismiss, Aquinas relies on *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School*, 202 Conn. 206 (1987). There, after plaintiff schoolteacher D'Ulisse-Cupo was not offered continued employment with the defendants, she brought suit alleging that the defendants were liable for oral representations regarding future work that she believed constituted a promise of continued employment. *See generally id.* Specifically, D'Ulisso-Cupo pled that she had relied on the principal's oral statements that there would be "no problem with her teaching certain courses and levels, that everything looked fine for rehire next year, and that she should continue planning" for a school program for which she was responsible. *Id.* at 208. In addition, D'Ulisse-Cupo pointed to a written notice posted on the school bulletin board by the principal or his agent stating that "[A]ll present faculty members will be offered contracts for the following year." *Id.*

11

Affirming the trial court's decision to strike the promissory estoppel claim, the Connecticut Supreme Court determined that D'Ulisse-Cupo had failed to allege statements sufficiently definite or promissory to support contractual liability. *Id.* at 214. The identified statements were instead "no more than representations indicating that the defendants intended to enter into another employment contract with the plaintiff at some time in the future" that "manifested no present intention on the part of the defendants to undertake immediate contractual obligations to the plaintiff," especially because "none of the representations contained any of the material terms that would be essential to an employment contract, such as terms regarding the duration and conditions of [D'Ulisse-Cupo's] employment . . . and her salary and fringe benefits." *Id.* at 214-15. Due to the "vagueness and indefiniteness" of the alleged statements, and the imperative that courts "not . . . intervene to impair the exercise of managerial discretion," the Connecticut Supreme Court held that the statements did not render the school defendants liable for promissory estoppel. *Id.* at 216 (internal quotation marks and citations omitted).

Sikorsky likewise relies on a similar decision, *Emanuele v. Boccaccio & Susanin, Inc.*, in which a plaintiff alleged that her supervisor said that she "had nothing to worry about with respect to her position and that her job was secure as long as she performed her job as she had in the past." 1992 WL 79823, at *2 (Conn. Super. Ct. Apr. 10, 1992). There, the Superior Court inferred that the plaintiff was an at-will employee and granted the defendant's motion to strike the plaintiff's promissory estoppel claim. *Id.* at *1, *6. It reasoned as follows:

> The representations of the defendant . . . are neither sufficiently promissory nor sufficiently definite to support contractual liability. These representations manifested no present intention on the part of the defendants to undertake immediate contractual obligations to the plaintiff. Furthermore, none of these representations contained any of the material terms that would be essential to an

employment contract, such as terms regarding the duration and conditions of the
plaintiff's employment, and her salary and fringe benefits.

*Id.* at \*6 (cleaned up).

In opposition, DiPiave relies on *Stewart v. Cendant Mobility Servs. Corp.*, 267 Conn. 96
(2003). *See* Pl.'s Opp'n to Aquinas Mot., Doc. No. 28, at 18-19. There, the plaintiff and her
husband were employed at the same company. After the husband was laid off, the plaintiff
became concerned that her husband's potential re-employment at a competitor could adversely
affect her employment with the defendant. The plaintiff sought reassurance from a supervisor,
who informed her that both the supervisor and company president felt that "there were no
problems whatsoever with [the plaintiff] continuing the job in the event [that her husband]
competed." *Id.* at 103. After the plaintiff's husband was hired by a competitor, however, the
defendant employer altered the terms and conditions of her employment and ultimately
discharged her. *Id.* at 100. Evaluating this evidence at trial, the jury returned a favorable verdict
on the plaintiff's claim for promissory estoppel. *Id.* at 101. The defendant attempted to set aside
the jury verdict and obtain a judgment notwithstanding the verdict for insufficient evidence, but
the Connecticut Supreme Court rebuffed its effort. *Id.* at 101-02.

Advising that "clarity and definiteness are the determinative factors in deciding whether
the statements are indeed expressions of commitment as opposed to expressions of intention,
hope, desire or opinion," the court deemed the defendant's narrow representation "that
[Stewart's] employment with Cendant would not be affected adversely if her husband
subsequently secured employment with a competing relocation services firm" as sufficiently
clear and definite to incur liability under a theory of promissory estoppel. *Id.* at 105–06. The
court distinguished Stewart's claim from that of D'Ulisse-Cupo on the basis that the defendants'
representations disclaiming any impact of Stewart's husband's hypothetical employment were

13

substantially more "limited in scope" than D'Ulisse-Cupo's alleged "promise of an entirely new employment contract." *Id.* at 110.

Even though I credit DiPiave's well-supported contention that Connecticut law does not require that an employer's promise be tantamount to a full employment contract identifying all material terms and conditions of employment, I agree with Defendants that the plaintiffs' promises, as pled, fall short of stating a claim for promissory estoppel liability.[3]  Beyond the fact that the plaintiffs in all three of the cited cases identified the misrepresenting statements and the speaker of the statements, which DiPiave does not do here, I analogize this case more to *D'Ulisse-Cupo* and *Emanuele* than *Stewart* because the promise at issue in the instant case was neither especially clear nor at all definite.  DiPiave alleges that, as a contract employee, she "would be able to apply for permanent positions" with Sikorsky, Compl., Count 1, ¶ 3; that Defendants promised that they had "sufficient work to keep [DiPiave] employed"; and that she "would be transitioned to a full-time" Sikorsky employee.  Compl., Count 3, ¶ 9.  In light of DiPiave's presumed at-will employment status, Defendants' alleged representations appear to concern the expectation of a future contract— specifically, DiPiave's future opportunity to apply for a permanent position with Sikorsky, at which point she would transition to a full-time non-contract employee.  At a minimum, the alleged representations do not manifest any present intent on behalf of Sikorsky to undertake immediate contractual obligations for DiPiave's transition to full-time employment with Sikorsky.  *Compare Barbuto v. William Backus Hosp.,* 1995 WL

---

[3] As DiPiave emphasizes, the Connecticut Supreme Court clarified in *Stewart* that a plaintiff need not establish that a defendant's promise was so definite and specific that was "the equivalent of an offer to enter into a contract," requiring "the material terms of a new employment contract." 267 Conn. at 108-09.  The issue in *D'Ulisse-Cupo* was whether the defendants had promised a new contract of employment; therefore, the Connecticut Supreme Court clarified, its consideration of the absence of contract terms bore on its analysis of the defendants' purported promise and the reasonableness of the plaintiff's reliance.  *Id.* at 108.  For that reason, I cannot agree with Aquinas that "[t]o be binding, the promise must . . . contain the material terms that are essential to the formation of a contract." Aquinas Mem., Doc. No. 20-1, at 8.

235068, at *5-*6 (Conn. Super. Ct. Apr. 13, 1995) (where defendant purportedly represented that it would not "take [the plaintiff's job] away," plaintiff did not allege a representation manifesting a present intention to undertake immediate contractual obligations to the plaintiff), *and Neuharth v. Connecticut Inst. for the Blind*, 1991 WL 35616, at *2 (Conn. Super. Ct. Mar. 8, 1991) (where defendant's alleged "'assurances' that plaintiff would not be discharged were even "less sufficient to state a claim for promissory estoppel than the facts alleged by the D'Ulisse-Cupo plaintiff," plaintiff did not plead a sufficiently clear and definite promise), *with Lee v. Grocery Haulers Inc.*, 2020 WL 7481799, at *1 (D. Conn. Dec. 18, 2020) (where defendant represented that "a policy existed whereby [plaintiff] would not be discharged from employment without the application of a progressive disciplinary policy," plaintiff pled a sufficiently clear and definite promise), *and Goldstein v. Unilever*, 2004 WL 1098789, at *4, *6 (Conn. Super. Ct. May 3, 2004) (where plaintiff alleged receiving verbal and written offers of employment outlining clear and definite terms, including a salary and bonus plan, but was told on her first day of work that the offer was rescinded, plaintiff pled a clear and definite promise on which she could reasonably rely).

That said, I do not decide at this time that DiPiave's claim for promissory estoppel is necessarily futile. DiPiave may replead her promissory estoppel claim if she can allege facts supporting a sufficiently clear, definite, and promissory representation.

I conclude that the problem with Count Three is deficient pleading, and I dismiss Count Three without prejudice and with leave to amend.

## IV.      Conclusion

For the foregoing reasons, I **grant** Defendants' motions to dismiss, docs. no. 20-21, and dismiss Counts Two and Three without prejudice.

DiPiave may file an amended complaint **within thirty days** of the date of this Order, on or before **August 16, 2023**.  Upon repleading, DiPiave must comply with the pleading standards required by Federal Rules of Civil Procedure 8 and 9(b), in relevant part, and should clearly indicate the party against whom each claim is directed (including if the claim is directed to all parties).

The dismissals of Counts Two and Three without prejudice will become dismissals with prejudice unless DiPiave timely files an amended complaint curing the noted pleading deficiencies.

So ordered.

Dated at Bridgeport, Connecticut, this 17th day of July 2023.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

16